Rom Bar-Nissim (SBN: 293356)
Rom@HeahBarNissim.com
**HEAH BAR-NISSIM LLP**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: 310.432.2836

Attorneys for Plaintiff
Ted Entertainment, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TED ENTERTAINMENT, INC., a California Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>MORGAN KAMAL MAJED p/k/a FROGAN, an individual, and DOES 1-10<br><br>                    Defendants. | Case No.: 2:25-cv-5565-JFW-MAA<br><br>[Assigned for all purposes to the Hon. John F. Walter]<br><br>**DECLARATION OF ROM BAR-NISSIM IN SUPPORT OF PLAINTIFF TED ENTERTAINMENT, INC.'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MORGAN KAMAL MAJED**<br><br>Action Filed: June 19, 2025<br><br>Date: August 10, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7A |

## DECLARATION OF ROM BAR-NISSIM

I, Rom Bar-Nissim, do hereby state and declare as follows:

1.      I am an attorney at law, duly licensed to practice law in the State of California and the United States District Court for the Central District of California. I am a partner at the law firm of Heah Bar-Nissim LLP and attorney of record for plaintiff Ted Entertainment, Inc. ("TEI") in the above-referenced matter. I have personal knowledge of the facts contained in this declaration and, if called and sworn as a witness, I could and would competently testify thereto. I made this declaration in support of TEI's Application for Default Judgment (the "Application") against Defendant Morgan Kamal Majed p/k/a Frogan ("Frogan").

2.      On January 27, 2025, I submitted the application to the United States Copyright Office (the "USCO") for TEI's audiovisual work entitled *Content Nuke: Hasan Piker* ("*The Nuke*"). On January 28, 2025 (the following day), I submitted the deposit copy of *The Nuke* to the USCO. The USCO gave *The Nuke* a registration date of January 28, 2025 and the registration number of PAu 4-256-429. A true and correct copy of the USCO registration certificate for *The Nuke* is attached hereto and incorporated herein as **Exhibit 1.**

3.      I subpoenaed Reddit, Inc. and Discord, Inc. for the personal identifying information the Doe defendants (collectively, the "H3Snark Mods") in connection with the action *Ted Entertainment, Inc. v. Saber et al.* (C.D. Cal. Case No. 2:25-cv-05564-WLH-PD) (the "Saber Action"). The Saber Action involved a watch party similar to the one at issue in this case. Like this case, the H3Snark Mods promoted that watch party of *The Nuke* as well. The H3Snark Mods initiated an action in the United States District Court for the Northern District of California to quash the subpoenas entitled *In re Subpoenas to Reddit, Inc. and Discord, Inc.* (N.D. Cal. Case No. 3:25-mc-80296-SK) (the "Motion to Quash Action"). On April 29, 2026, the Honorable Sallie Kim issued an order denying the H3Snark Mods motion (the "4/29/26 Order"). In the order, Magistrate Kim discussed the cultural

phenomenon known as "hatewatching" – *i.e.*, individuals who desire to consume a copyrighted work because they enjoy the "terribleness" of the work or experiencing "revulsion." A true and correct copy of the 4/29/26 Order is attached hereto and incorporated herein as **Exhibit 2**.

4. On June 19, 2025, TEI filed its complaint in the present action, the Saber Action and another action for a similar watch party of *The Nuke* in the United States District Court for the Western District of Missouri entitled *Ted Entertainment, Inc. v. Caviness et al.* (W.D. Mo. Case No. 4:25-cv-00459-BCW) (the "Caviness Action"). Shortly thereafter, TEI released a video entitled *I'm Suing These Three Creators* were Ethan explained why the present action, Saber Action and Caviness Action were filed. In response, Frogan set up a GoFundMe for her legal defense.[1] A true and correct screenshot of Frogan's GoFundMe taken on June 29, 2026 is attached hereto and incorporated herein as **Exhibit 3.**

5. TEI retained a private investigator to run a background report to find Frogan's latest address. This was to ensure the present action was brought in the proper court and to serve Frogan with the Complaint. TEI made multiple attempts to serve Frogan at her apartment, but she refused to answer the door. TEI was forced to conduct surveillance of her apartment to serve her. Ultimately, a member of Frogan's household was served and a copy mailed to her address. Shortly thereafter, Frogan's counsel – Bahram Niknia – contacted me contesting substituted service. Mr. Niknia agreed to waive any objections to service if TEI granted Frogan an additional sixty days to respond to the complaint. The parties executed a stipulation to that effect (Dkt. No. 13), which the court entered that very day (Dkt. No. 14). Consequently, Frogan's deadline to respond to the Complaint was October 3, 2025. During the extended time to respond, I conducted settlement negotiations with Frogan's counsel. After the October 3, 2025 deadline to respond had passed, TEI refrained from seeking default to further facilitate settlement negotiations.

---

[1] As of this filing, Frogan's GoFundMe is still publicly available at: https://www.gofundme.com/f/frogans-lawsuit-defense-fund

DECLARATION OF ROM BAR-NISSIM ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT

6.     By mid-April 2026, it was apparent that settlement discussions were at an impasse. On April 20, 2026, I informed Frogan's counsel that TEI wished to proceed with litigation and that it would seek default and default judgment if Frogan refused to respond in three weeks (*i.e.*, May 11, 2026). I granted Frogan an additional three weeks to respond to the Complaint because this would be the amount of time she would ordinarily have to respond under Federal Rule of Civil Procedure Rule 12 if the Complaint had been served that day. A true and correct redacted copy of my April 20, 2026 email to Frogan's counsel (with settlement communications and counsel's private email address redacted) is attached hereto and incorporated herein as **Exhibit 4.** On May 11, 2026, Frogan did not file a response. Despite knowing that she would default, Frogan's GoFundMe remains up and she has received numerous donations in the past thirty days.

7.     Default was entered against Frogan on May 20, 2026 for her failure to respond to the Complaint. Frogan is not an infant or incompetent person. Frogan is not a service member and, therefore, the Servicemembers Civil Relief Act (50 U.S.C. § 521) does not apply. On May 19, 2026, my office served Frogan's counsel the request for default via regular mail and will serve Frogan's counsel this Application and its supporting papers by the same method.

8.     Despite the entry of default (and knowing that default would be entered), Frogan's GoFundMe remains up as of this filing. She has received numerous donations – even after entry of default on May 20, 2026. After entry of default against Frogan became public, a major public controversy erupted. Frogan was confronted about not using her legal defense fund to mount a defense by her donators and others. Forgan's response was to mislead the public by claiming the action was not over, that she did not lose and continued to solicit donations. Below are some examples:

   a.  On or around May 21, 2025, when a chatter asked her about the present action, Frogan stated: "I didn't lose the lawsuit." *See*

3

https://x.com/thekinogrove/status/2057661612350206349?s=46

b. On or around May 21, 2026, a person stated in Frogan's chat: "I donated $200 to your gofundme, super disappointed as to the lack of clarity on where the money went. really let down." Frogan responded with, "I don't think you guys realize that the lawsuit is still going. … I don't think you guys realize that the lawsuit is not over. I've been fighting this lawsuit since … August." *See* https://x.com/DramaAlert/status/2057838791327392113?s=46

c. On or around May 26, 2026, in response to a chatter asking about the present action, Frogan stated, *inter alia*: "The lawsuit is still ongoing. Nobody won. Nobody lost. It is still ongoing." *See* https://x.com/Leigha_Sapienti/status/2059525351408029931

9. I am a highly experienced copyright litigator, particularly as to fair use, as set forth in detail below.

a. The copyright cases I have been involved in that resulted in a published or unpublished decisions on the merits are: (1) *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (amicus); (2) *Nichols v. Club for Growth*, 235 F.Supp.3d 289 (D.D.C. 2017); (3) *Hosseinzadeh v. Klein*, 276 F.Supp.3d 30 (S.D.N.Y. 2017); (4) *DraftExpress, Inc. v. Whistle Sports, Inc.*, 2022 WL 16962285 (C.D. Cal. Aug. 2, 2022); (5) *Triller Fight Club II LLC v. H3 Podcast*, 2023 WL 11877604 (C.D. Cal. Sept. 15, 2023); (6) *Edelmania Productions, LLC v. Service*, 2023 WL 8114858 (C.D. Cal. Sept. 25, 2023); (7) *Vogts v. Penske Media Corp.*, 2023 WL 7107276 (C.D. Cal. Aug. 30, 2023); and (8) *Whyte Monkee Productions, LLC v. Netflix, Inc.*, 174 F.4th 761 (10th Cir. 2026) (amicus).

b. I have drafted numerous publications regarding copyright including, (1) from 2014 to the present, I authored the chapter on Copyright for *California Internet Law and Practice* (CEB/Lexis) and became the co-

DECLARATION OF ROM BAR-NISSIM ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT

executive editor of the publication; (2) *How the Internet Globalized United States Copyright Law* (California Lawyers Association Legal Perspectives); (3) *The Digital First Sale Doctrine* (California Business Practitioner); (4) *To Give Fees or Not to Give Fees, That is the Question (With A Different Answer in Every Circuit): The Circuit Split Over Attorneys' Fees Awards Under the Copyright Act* (Media Law Resource Center Bulletin); and (5) *Kirtsaeng Episode II: The Revenge of the Factors* (Media Law Resource Center Bulletin).

c.      I have guest lectured on copyright law at the University of California, Irvine School of Law and the University of Southern California Annenberg School of Journalism. I have spoken at several panels about copyright law, including for: (1) the American Bar Association Forum on the Entertainment & Sports Industries; (2) the American Bar Association Committee for Copyright and Emerging Technology; (3) the American Bar Association Forum on Communications Law; (4) the Copyright Society; (5) the Public Relations Society of America.

d.      I also served as co-chair of the Los Angeles chapter of the Copyright Society.

e.      I graduated in the top 10% of my class at the University of Southern California Gould School of Law. I received the Norma Zarky Memorial Award for Excellence in the Field of Entertainment Law as well.

f.      For this matter, I charged $375 to $400 an hour. This is less than my usual billable hourly rate of $500 an hour. I am deeply familiar with the rates for experienced copyright litigators in the Los Angeles market. I am personally aware of several copyright attorneys with less experience than me who charge around $800 an hour. As such, the billable hourly rate I charged in this matter is extremely reasonable in light of my knowledge and experience with copyright law.

5

DECLARATION OF ROM BAR-NISSIM ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT

10. I billed a total of $28,182.50 in fees to TEI for work in this matter for 73.4 of hours of work as detailed below.

a. I spent 16.1 hours at $375 an hour for a total of $6,037.50 reviewing and outlining Frogan's watch party of *The Nuke*. This process involved: (1) noting each timestamp where Frogan played *The Nuke*; (2) creating a written description the portion shown; (3) noting each timestamp where Frogan paused *The Nuke*; (4) creating a written description of what occurred, including transcribing Frogan's admissions; (5) reviewing the portion before Frogan's watch party; and (6) noting timestamps of key admissions and transcribing the same. These notes were critical to conducting my analysis that the fair use defense did not apply and for allegations I would include in the Complaint.

b. I spent 31 hours at $375 an hour and 5.2 hours at $400 an hour for a total of $13,705 on the Complaint. This process included: (1) researching the latest developments in fair use law; (2) conducting an investigation into Frogan's past; (3) conducting research into various assertions made by Frogan during her watch party; (4) drafting and revising the allegations of the complaint; (5) assembling and preparing the exhibits to the complaint; and (6) drafting and revising the civil case information sheet, the request for summons, the certificate of interested parties, AO121 and Notice of Lodging.

c. I spent 3.5 hours at $400 an hour for a total of $1,400 on: (1) communications with opposing counsel about service issues, extension of the time to respond to the complaint and settlement negotiations; and (2) drafting the joint stipulation extending Frogan's time to respond to the complaint.

d. I spent 17.60 hours at $400 an hour for $7,040 on the papers requesting default and default judgment. This included: (1) researching the law governing default and default judgment, particularly in the copyright

6

infringement context; (2) drafting and revising the request for default; and (3) drafting and revising the notice of application, its memorandum of points and authorities and this supporting declaration.

11.    After conducting my review of Frogan's watch party, it became apparent to me that it would be more cost-effective to delegate certain tasks to a researcher. My firm retained Mica Goldstein of Nahara Strategic, Inc. Ms. Goldstein is a former online content creator with extensive experience in the online space. She is also a historian with a particular focus on Jewish history. The researcher charged $30 an hour for 64.9 hours for a total of $1,947 and $45 an hour for 6.1 hours for a total of $274.50 with a grant total of $2,221.50. Ms. Goldstein's work comprised of conducting historical research and drafting memos on the same (which were included in the complaint), conducting online investigations and drafting memos on the same (which were included in the complaint and in this application) and reviewing the complaint for typos and clarity. Hiring Ms. Goldstein helped ensure my time was well spent on legal matters instead of matters that did not require legal expertise.

12.    TEI is not seeking recovery of certain items I billed, namely the 4.3 hours I billed at $400 an hour working on a potential ex parte application to subpoena Reddit and Discord. Not only did this work become moot (as they were authorized in the Saber Action), it did not directly relate to Frogan. Further, I exercised my discretion to not bill substantial amounts of work as a courtesy to the client.

///

///

///

///

///

///

DECLARATION OF ROM BAR-NISSIM ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT

13.    True and correct copies of the invoices I issued to TEI in connection with this matter are attached hereto and incorporated herein as **Exhibit 5.** I have retracted the description of the time entries on the grounds they are attorney client communications and confidential.

I declare under penalty of perjury that the contents of this declaration are true and correct. Executed this 29th of June 2026 in Los Angeles, California.

*/s/ Rom Bar-Nissim*

Rom Bar-Nissim

DECLARATION OF ROM BAR-NISSIM ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT

## <u>PROOF OF SERVICE</u>

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the within action or proceeding.  My business address is the law firm of Heah Bar-Nissim LLP, 1801 Century Park East, Suite 2400, Los Angeles, CA 90067.

On June 29, 2026, I served the following document(s) **DECLARATION OF ROM BAR-NISSIM IN SUPPORT OF PLAINTIFF TED ENTERTAINMENT, INC.'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MORGAN KAMAL MAJED**

| | |
|---|---|
| Bahram Niknia<br>NIKNIA LAW FIRM, INC.<br>1875 Century Park East<br>Suite 1240<br>Los Angeles, CA 90067 | Attorney for Defendant Morgan Kamal Majed p/k/a Frogan |

**[X]     BY MAIL:** I enclosed the document(s) identified above in a sealed envelope or package addressed to the persons addressed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary  course of business with the United States Postal Service, in a sealed envelope with postage fully paid. attached the document(s) to an email sent to the email addresses set forth above

I declare under penalty of perjury that the foregoing is true and correct and a member of the bar of this Court.

Executed this June 29, 2026, at Los Angeles, CA.

*/s/ Rom Bar-Nissim*

Rom Bar-Nissim

1
DECLARATION OF ROM BAR-NISSIM ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT