Rom Bar-Nissim (SBN: 293356)
Rom@HeahBarNissim.com
**HEAH BAR-NISSIM LLP**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: 310.432.2836

Attorneys for Plaintiff
Ted Entertainment, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TED ENTERTAINMENT, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN KAMAL MAJED p/k/a FROGAN, an individual, and DOES 1-10<br><br>Defendants. | Case No.: 2:25-cv-5565-JFW-MAA<br><br>[Assigned for all purposes to the Hon. John F. Walter]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TED ENTERTAINMENT, INC.'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MORGAN KAMAL MAJED**<br><br>Action Filed: June 19, 2025<br><br>Date: August 10, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7A |

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

# TABLE OF CONTENTS

**I. INTRODUCTION**.................................................................................................. **1**

**II. STATEMENT OF FACTS** ................................................................................. **1**

**III. LEGAL STANDARD** ....................................................................................... **6**

**IV. ARGUMENT** ..................................................................................................... **6**

    **A.**    **TEI has Complied With Local Rule 55-1**.......................................... **6**

    **B.**    **TEI will be Prejudiced Without a Default Judgment**...................... **7**

    **C.**    **TEI's Claim of Copyright Infringement Against Frogan has Merit** ................................................................................................ **7**

    **D.**    **The Amount of Money at Issue Favors Default Judgment**............. **8**

        **1.**    **TEI Should be Awarded $150,000 in Statutory Damages**........................................................................................ **9**

        **2.**    **Alternatively, TEI should be Awarded the Amount in Frogan's GoFundMe** ................................................................ **11**

        **3.**    **TEI is Entitled to its Attorneys' Fees**.................................... **13**

        **4.**    **TEI is Entitled to Costs** ........................................................... **14**

    **E.**    **There is No Dispute of Material Fact**.............................................. **14**

    **F.**    **There is No Possibility of Excusable Neglect**................................. **15**

    **G.**    **The Policy Favoring Decisions on the Merits is Inapplicable**....... **15**

**V. CONCLUSION** ................................................................................................. **16**

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Amazon Content Services LLC v. DeBarr*,

  793 F.Supp.3d 1242 (C.D. Cal. 2025) ............................................................11, 13

*Bd. of Trs. Of Sheet Metal Workers v. Moak*,

  2012 WL 5379565 (N.D. Cal. Oct 31, 2012) ....................................................7, 8

*Columbia Pictures Industries, Inc. v. Galindo*,

  2022 WL 17094713 (C.D. Cal. Nov. 18, 2022) ...................................................11

*Custer v. Cristo Armstrong Powers, Inc.*,

  2020 WL 6224559, *1 (C.D. Cal. July 7, 2020) ...................................................7

*Craigslist, Inc. v. Naturemarket, Inc.*,

  694 F.Supp.2d 1039 (N.D. Cal. 2010)..............................................................14, 15

*Dream Games of Arizona, Inc. v. PC Onsite*,

  561 F.3d 983 (9th Cir. 2009) ...............................................................................10

*Eitel v. McCool*,

  782 F.2d 1470 (9th Cir. 1986) ..........................................................................6, 15

*Evans v. Creditor's Specialty Serv., Inc.*,

  2016 WL 730277 (N.D. Cal. Feb. 24, 2016).........................................................7

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,

  772 F.2d 505 (9th Cir. 1985) ...............................................................................12

*Geddes v. United Fin. Grp.*,

  559 F.2d 557 (9th Cir. 1977) ..............................................................................6, 8

*Globe Entertainment and Media Corp. v. Global Images USA*,

  2022 WL 2703845 (C.D. Cal. July 11, 2022).......................................................9

*Landstar Ranger, Inc. v. Parth Enters., Inc.*

  725 F.Supp.2d 916 (C.D. Cal. 2010)................................................................7, 14

*Microsoft Corp. v. McGee*,

   490 F.Supp.2d 874 (S.D. Ohio 2007) ........................................................................9

*Nintendo of America, Inc. v. Dragon Pacific Intern.*,

   40 F.3d 1007 (9th Cir. 1994) ..................................................................................10

*Parisienne v. OTDIHH LLC*,

   2023 WL 11195910 (C.D. Cal. Oct. 4, 2023) ..........................................................6

*PepsiCo v. Triunfo-Mex, Inc.*,

   189 F.R.D. 431 (C.D. Cal. 1999) ..............................................................................6

*PepsiCo., Inc. v. Cal. Sec. Cans*,

   238 F.Supp.2d 1172 (C.D. Cal. 2002) ....................................................7, 8, 15, 16

*Polar Bear Productions, Inc. v. Timex Corp.*,

   384 F.3d 700 (9th Cir. 2004) ..................................................................................12

*Skidmore v. Led Zeppelin*,

   952 F.3d 1051 (9th Cir. 2020) ..................................................................................8

*TeleVideo Systems, Inc. v. Heidenthal*,

   826 F.2d 915 (9th Cir. 1987) ....................................................................................6

*Tresona Multimedia, LLC v. Burbank High School Vocal Music Association*,

   953 F.3d 638 (9th Cir. 2020) ..................................................................................13

*United Fabrics International, Inc. v. C&J Wear, Inc.*,

   630 F.3d 1255 (9th Cir. 2011) ..................................................................................8

*Wareka v. Queen B. Makeup Corp.*,

   2024 WL 4867233 (C.D. Cal. Sept. 20, 2024) ..............................7, 8, 14, 15, 16

*Wecosign, Inc. v. IFG Holdings, Inc.*,

   845 F.Supp.2d 1072 (C.D. Cal. 2012) ....................................................................14

*VHT, Inc. v. Zillow Grp., Inc.*,

   918 F.3d 723, (9th Cir. 2019) ..................................................................................9

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

**Statutes**

17 U.S.C. § 106...........................................................................................................8

17. U.S.C. § 410...........................................................................................................8

17 U.S.C. § 504..................................................................................................9, 11, 12

28 U.S.C. § 1920........................................................................................................14

**Rules**

Federal Rule of Civil Procedure 8 ...............................................................................8

Federal Rule of Civil Procedure 12 ........................................................................5, 15

Federal Rule of Civil Procedure 54 .........................................................................14

Federal Rule of Civil Procedure 55 ..................................................................1, 6, 15

**Other Authorities**

H.R. Rep. No. 94-1476 ..............................................................................................12

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b)(2), Plaintiff Ted Entertainment, Inc. ("TEI") respectfully requests this Court to grant its Application for Default Judgment against Defendant Morgan Kamal Majed p/k/a Frogan ("Frogan") for the reasons set forth below.

## I.   <u>INTRODUCTION</u>

Defendant Frogan successfully raised nearly $40,000 to "defend" herself from TEI's copyright infringement claim. Instead of using these funds to defend herself, Frogan evaded service and refused to respond to TEI's complaint. Even after default was entered, she continued to solicit and accept donations by claiming the present action was not over.

Frogan's hope is that this Court issues a lenient default judgment that slaps her on the wrist, while she quietly pockets the money she raised. This Court must send a message: there are serious consequences to engaging in willful and malicious copyright infringement and default judgment is not a "get out of jail free" card. As such, TEI respectfully requests this Court to enter default judgment and grant TEI: (1) $150,000 in statutory damages or, alternatively, $39,179 in actual damages (whichever is greater); (2) $30,404 in attorneys' fees; and (3) authorize TEI to submit a bill of costs.

## II.   <u>STATEMENT OF FACTS</u>

Frogan abandoned a career in public health to become an online extremist political streamer and provocateur. Dkt. No. 1 ("Cmpt."), ¶¶ 16-17. Some notable examples of her online career include: (1) wishing veterans receive PTSD; (2) offering to make a cake recreating September 11th if she received a certain amount of contributions; (3) hosting a panel involving a racial tier list with "Arab" at the top and "Loves Sabra" (*i.e.*, Loves Israelis) at the bottom; and (4) fabricating multiple claims that she is being persecuted by Jews and Zionists. *Id.*, pp. 9:9-

10:23, 36:11-37:21.[1]

Prior to the massacre of October 7th, Frogan was an effusive fan of TEI's content, including its owners Ethan and Hila Klein. Cmpt., pp. 7:11-17, 10:23-11:2. After October 7th, this completely changed. Beginning on October 7th, Frogan made several social media posts that expressed her support for Hamas and outlandish conspiracy theories – including the false claim that Israelis harvested the skin and organs of dead Palestinians. *Id.*, pp. 11:2-12:28. When Ethan Klein quietly unfollowed her on Twitter, Frogan, made a public spectacle of the situation to solicit sympathy and attack Ethan. *Id.*, p. 12:1-5.

Frogan continued to target the owners of TEI. In the racial tier list discussed above (which was hosted by Frogan's streaming platform, Twitch), Ethan was the first person placed in the "Loves Sabra" category – with one participant even stating a new category for "Zionist" should be created for Ethan. Cmpt., pp. 36:26-37:21. Frogan placed Ethan in the "Loves Sabra" category as an attack on Ethan and his wife Hila (who is a sabra). *Id*.

Beginning in late 2024, Ethan and Hila (through TEI) began working on the audiovisual work *Content Nuke: Hasan Piker* ("*The Nuke*"). Cmpt., ¶¶ 36-38. *The Nuke* is a tragi-comic documentary that chronicles how the prominent leftist online personality, Hasan Piker, radicalizes his audience to support communism and terrorism against Jews and Israelis. Cmpt., pp. 30:1-39:18 (summarizing *The Nuke*); *see also* Ex. D (deposit copy of *The Nuke*); Ex. E (broadcast copy of *The Nuke*).[2] On January 28, 2025, TEI registered *The Nuke* with the Copyright Office and it was given the registration number of PAu 4-256-429. Cmpt., ¶ 38; Declaration of Rom Bar-Nissim ("RBN Decl."), ¶ 2; Ex. 1.

---

[1] Citations to page numbers of the Complaint are to the ECF page numbers.

[2] As explained in the Complaint, the deposit copy of *The Nuke* varied slightly from the broadcast version, namely (1) the deposit copy did not contain the conclusion that was contained in the broadcast version; (2) the deposit copy did not black out footage of Hamas releasing hostages in November 2023; (3) the deposit copy did not blur footage of the Houthis entering the bridge of the *Galaxy Leader*; and (4) minor visual edits. Cmpt., ¶ 39.

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

Ethan began promoting *The Nuke* heavily in January 2025 and public interest was high. Cmpt., ¶ 41. The Doe defendants (collectively, the "H3Snark Mods") promoted various watch parties of *The Nuke* to the users of the H3Snark subreddit – *i.e.*, a message board of "fallen fans" of the Kleins and TEI's content. Cmpt., ¶¶ 21-25, 41-43, Exs. F-G. The H3Snark Mods had a history of engaging in piracy of TEI's copyrighted works. Cmpt., pp. 17:14-28:13. As the Honorable Sallie Kim explained in her April 29, 2026 Order denying the H3Snark Mods motion to quash:

> Although it may seem counterintuitive that opponents of the Kleins would want to watch the Kleins' programs, they were engaging in a cultural phenomenon known as "hatewatching."

The Urban Dictionary defines the term "hatewatch" as follows:

> A hatewatched show is one the viewer genuinely despises but cannot stop watching, This could be because it is so "<u>important</u>: they feel they have to, because it has enough promise that they hope it gets better, because it's so well-crafted in it's [sic] terribleness that the badness itself is noteworthy, or because they enjoy the <u>adrenaline</u> that pure revulsion can bring. Whatever the reason, the hatewatcher can't look away from the trainwreck.

RBN Decl., ¶ 3, Ex. 2 at 9:26-10:6 (original emphasis); *In re Subpoenas to Reddit, Inc. and Discord, Inc.* (N.D. Cal. Case No. 3:25-mc-80296-SK), Dkt. No. 45.

The H3Snark Mods made two highly visible community posts that directed H3Snark users to watch Frogan's watch party of *The Nuke* instead of the original. Cmpt., ¶ 42, Exs. F-G. The first was made on January 30, 2025 (*i.e.*, the day before *The Nuke* was publicly released) and featured Frogan (with a link to her stream on Twitch) as a place "to watch the nuke without showing support for H3" (*i.e.*, TEI). Cmpt., p. 40:2-13, Ex. F. The second was made shortly after *The Nuke* was released on January 31, 2025 and featured Frogan as a place "to watch reactions to" *The Nuke* with a link to her stream on Twtich. *Id.*, p. 40:14-22; Ex. G.

Frogan also promoted her watch party of *The Nuke*. The day before *The Nuke* was released, Frogan encouraged her audience to deprive TEI of views by viewing the watch parties of *The Nuke* by other Twitch streamers, including her own. Cmpt., pp. 46:22-47:6; Ex. I. In the hour leading up to *The Nuke*'s release, Frogan

3

promoted her watch party and acknowledged that she was receiving first time viewers from H3Snark. Cmpt., p. 47:7-26, Ex. H at 19:53. 34:04, 38:54, 52:16, 54:09, 1:09:38. These statements included:

- "We have a bingo card. Uh, the *Snark Reddit* made it. *Shout out to them*."
- "That you guys so much! I do appreciate everyone's support. And *thank you for watching it with me*."
- [Reading chatter] "First time viewer. Time to *watch the nuke ethically*." [Frogan's response] "Hell yeah!"
- [Reading chatter] "I found my way from *Reddit*!" [Frogan's response] "Hi guys! *Welcome Reddit people! Reddit people! Reddit people!*"
- [Reading chatter] "I came from the *H3Snark reddit*. Ethan is so pathetic, while Hasan is unbothered and having a great time." [Frogan's response]. "Exactly!"
- [Reading chatter] "We're going to watch live. Right?" [Frogan's response]. "*We're going to watch it live. Yes*."

Frogan began her watch party of *The Nuke* one minute after its release when public interest was at its apex. Cmpt., pp. 47:27-48:7; Ex. H at 10:10:34. Her objective was to siphon views away from the original to herself and she succeeded in this goal. *Id.* During her watch party, she let long portions of *The Nuke* play without any interruption. Cmpt., pp. 48:8-50:9 (compiling timestamps). At one point, Frogan even let *The Nuke* play for several minutes while she went off-screen to go to the bathroom and remained silent when she returned. *Id.*, p. 50:11-19; Ex. H 2:15:00-2:18:06. When she did pause *The Nuke*, she was frequently silent, infringed on other copyrighted works and consistently failed to provide commentary or criticism on the style or substance of *The Nuke*. Cmpt., pp. 50:20-52:22 (collecting timestamps). Her poverty of commentary was so egregious that she got into arguments with her audience about it. *Id.*, pp. 52:23-53:14 (collecting timestamps). Frogan also used her watch party of *The Nuke* to solicit money and

she received numerous paid subscriptions and one-time payments, along with revenue from placing advertisements on her watch party. *Id.*, pp. 60:13-61:12.

On June 19, 2025, TEI sued Frogan for copyrighted infringement and the H3Snark Mods for contributory infringement. Dkt. No. 1. Shortly after Ethan publicly announced the lawsuit, Frogan set up a GoFundMe page entitled "Frogan's Lawsuit Defense Fund."[3] RBN Decl., ¶ 4, Ex. 3. In the description, she stated that the "fundraiser is to cover any and all legal fees associated with [TEI's] complaint" and "any counterclaims I may have". *Id.*

Despite her fundraiser, Frogan had no intention of defending this lawsuit. Initially, she evaded service and TEI was forced to conduct surveillance of her apartment to serve her. RBN Decl., ¶ 5; Dkt. No. 12. When Frogan's counsel contacted TEI's counsel contesting substituted service, TEI accommodated Frogan by giving her an additional 60 days to respond. *Id.*; Dkt. Nos. 13-14. During the extended time to respond, TEI and Frogan conducted settlement negotiations. RBN Decl., ¶ 5. After the deadline to respond had passed, TEI refrained from seeking default to further facilitate settlement negotiations. *Id.*

By mid-April 2026, it was apparent that settlement discussions were at an impasse. RBN Decl., ¶ 6. On April 20, 2026, TEI's counsel informed Frogan's counsel that TEI wished to proceed with litigation and that it would seek default and default judgment if Frogan refused to respond in three weeks (*i.e.*, May 11, 2026). *Id.*, Ex. 4. In other words, TEI gave Frogan the same amount of time to respond to the Complaint under FRCP Rule 12 if she had been served with it that day. *Id.*, Ex. 4.

Frogan chose default. On May 11, 2026, Frogan did not file a response. RBN Decl., ¶ 6. On May 19, 2026, TEI filed its request for the Clerk of this Court to enter default against Frogan – which was served on Frogan's counsel by mail. Dkt. No. 15. On May 20, 2026, the Clerk of this Court entered default against Frogan.

_____

[3] As of this filing, Frogan's GoFundMe is still publicly available at: https://www.gofundme.com/f/frogans-lawsuit-defense-fund

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

Dkt. No. 16.

A major public controversy erupted after default was entered against Frogan. RBN Decl., ¶ 8. Donators to her legal defense fund began confronting her about not defending the lawsuit. *Id.* Frogan's response was to mislead the public by claiming the action was not over, she did not lose and continued to solicit donations. *Id.* Indeed, after default was entered on May 20, 2026, Frogan continued to receive donations and her FoFundMe – which remains live as of this filing. *Id.*

## III.   LEGAL STANDARD

Default judgement is authorized under FRCP Rule 55(b)(2) after entry of default pursuant to FRCP Rule 55(a). While discretionary in nature, "default judgments are more often granted than denied." *Parisienne v. OTDIHH LLC*, 2023 WL 11195910, *1 (C.D. Cal. Oct. 4, 2023) (quoting *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).  In determining whether to enter default judgment, courts consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong public policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Parisienne*, 2023 WL 11195910, *1 (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).

Since "default has been entered against [the] defendant, the well-pleaded factual allegations of the complaint are taken as true, except those relating to damages." *Parisienne*, 2023 WL 11195910, *1 (citing *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV.   ARGUMENT

### A.   TEI has Complied With Local Rule 55-1

As a preliminary matter, Local Rule 55-1 requires that the following matters

be accompanied by a declaration:

> (a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) That notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)

L.R. 55-1.

Here, TEI satisfied all the requirements of Local Rule 55-1. RBN Decl., ¶ 7.

### B.   **TEI will be Prejudiced Without a Default Judgment**

"Prejudice can be shown if denying default judgment would leave a plaintiff without a remedy." *Wareka v. Queen B. Makeup Corp.*, 2024 WL 4867233, *2 (C.D. Cal. Sept. 20, 2024) (citing *Landstar Ranger, Inc. v. Parth Enters., Inc.* 725 F.Supp.2d 916, 920 (C.D. Cal. 2010)). When, as here, Frogan has "elected not to respond to the complaint," it "den[ies]" TEI its "right to have" its "claim heard and to seek relief." *Wareka*, 2024 WL 4867233, *2 (quoting *Custer v. Cristo Armstrong Powers, Inc.*, 2020 WL 6224559, *1 (C.D. Cal. July 7, 2020); citing *Evans v. Creditor's Specialty Serv., Inc.*, 2016 WL 730277, *2 (N.D. Cal. Feb. 24, 2016)).

The first *Eitel* factor weighs in favor of granting default judgment. TEI has established prejudice absent default judgment because Frogan has elected not to respond to TEI's Complaint. *See* Dkt. No. 16. This denies TEI's right to have its claim for copyright infringement heard and obtain relief.

### C.   **TEI's Claim of Copyright Infringement Against Frogan has Merit**

The second *Eitel* factor asks whether the plaintiff has "state[d] a claim on which they may recover." *Wareka*, 2024 WL 4867233, *3 (internal brackets omitted) (quoting *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002)). "In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default." *Wareka*, 2024 WL 4867233, *3 (quoting *Bd.*

*of Trs. Of Sheet Metal Workers v. Moak*, 2012 WL 5379565, *2 (N.D. Cal. Oct 31, 2012); citing *Geddes*, 559 F.2d at 560; FRCP 8(d)).

TEI has alleged a claim of copyright infringement against Frogan. As such, TEI "must establish: (1) ownership of a valid copyright; and (2) copying of 'protected aspects of the work' by the defendant." *Wareka*, 2024 WL 4867233, *3 (quoting *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020)).

As to the first element, TEI has pled that *The Nuke* was registered with the Copyright Office on January 28, 2025. Cmpt., ¶ 38. The registration number for *The Nuke* is PAu 4-256-429. *Id.*. Further, TEI is providing the registration certificate for *The Nuke*. RBN Decl., ¶ 2, Ex. 1. "A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" *Wareka*, 2024 WL 4867233, *3 (quoting *United Fabrics International, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); 17 U.S.C. § 410(c)).

As to the second element, TEI has pled and proven Frogan's watch party violated TEI's exclusive rights in *The Nuke* by reproducing, publicly performing and creating a derivative of the entire work without authorization.[4] 17 U.S.C. §§ 106(1-2)(4); Cmpt., pp 46:17-63:9; *compare* Ex. E *with* Ex. H.

Therefore, the second *Eitel* factors favors default judgment because TEI has alleged and proven that Frogan committed copyright infringement of *The Nuke*.

**D.      The Amount of Money at Issue Favors Default Judgment**

The fourth factor requires considering "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F.Supp.2d at 1176. Here, TEI seeks: (1) $150,000 in statutory damages for willful infringement or, alternatively, $39,179 in disgorgement of profits (whichever is greater); (2) $30,404 in attorneys' fees; and (3) leave to file a bill of costs. In light of the

---

[4] TEI even set forth in exacting detail why Frogan failed to make a fair use of *The Nuke*. Cmpt., pp 41:5-46:15 (setting forth relevant law), pp. 46:16-62:15 (setting forth facts why Frogan's watch party fails each of the four fair use factors).

egregiousness of Frogan's conduct, this amount is reasonable as explained below.

### 1.   TEI Should be Awarded $150,000 in Statutory Damages

Under the Copyright Act, a copyright owner is entitled to statutory damages if the infringement occurred after registration. 17 U.S.C. §§ 504(a), 504(c)(1). Here, TEI registered *The Nuke* with the Copyright Office on January 28, 2025 and Frogan's acts of infringement occurred on January 31, 2025. Cmpt., ¶¶ 38; *Id.*, pp. 40:14-22, p. 45 fn. 41, pp. 47:27-48:7; Ex. H at 1:10:34; RBN Decl., ¶ 2, Ex. 1. Therefore, TEI is entitled to statutory damages.

Statutory damages range from $750 to $30,000 – but can be increased by up to $150,000 when the infringement is willful. 17 U.S.C. §§ 504(c)(1-2). To demonstrate willfulness, the plaintiff must show: "(1) that the infringing party was actually aware of the infringing activity, or (2) that the infringing party's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 748 (9th Cir. 2019) (internal brackets omitted). "When the defendant has defaulted, willful copyright infringement is proven." *Globe Entertainment and Media Corp. v. Global Images USA*, 2022 WL 2703845, *6 (C.D. Cal. July 11, 2022) (quoting *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 880 (S.D. Ohio 2007)).

Here, the evidence that Frogan willfully and maliciously infringed of *The Nuke* is overwhelming as summarized below:

- The day before *The Nuke* was released she encouraged viewers to view her watch party and the watch parties of others instead of the original. Cmpt., pp. 46:22-47:6; Ex. I.

- Prior to her watch party, Frogan repeatedly: (1) stated she was going to "watch" *The Nuke* live; (2) stated that viewing *The Nuke* with her was a way to "ethically" watch it; and (3) acknowledged that she was receiving viewers from Reddit who wanted to see pirated versions *The Nuke*. Cmpt., p. 47:7-26; Ex. H at 19:53, 34:04, 38:54, 52:16, 54:09.

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

- Beginning her watch party of *The Nuke* immediately upon its release when public interest was at its apex. Cmpt., pp. 47:27-48:7; Ex. H at 1:10:34.
- Letting significant portions *The Nuke* play without any interruption – even for minutes at a time. Cmpt., pp. 48:8-50:9 (collecting timestamps).
- Letting *The Nuke* play uninterrupted as she went to the bathroom off-camera and remained silent when she returned. Cmpt., p. 50:11-19; Ex. at 2:15:00-2:18:06.
- Playing other copyrighted works during her watch party without authorization. Cmpt., p. 51:6-12; Ex. H at 0:00:00-0:13:19, 1:50:23-52.
- Failing to comment on the vast majority of *The Nuke* to such an extent that her audience criticized her multiple times for not providing any criticism or commentary. Cmpt., pp. 51:13-53:14.
- On the rare occasions Frogan did speak during her watch party, her statements frequently had nothing to do with *The Nuke* whatsoever. Cmpt., pp. 53:28-54:20 (collecting examples and timestamps).
- Commercially exploiting *The Nuke*, including soliciting paid subscriptions, thanking new subscribers, promoting her podcast, displaying subscription goals and running ads on her watch party. Cmpt., pp. 60:13-61:12.

Under the Copyright Act, "statutory damages may serve completely different purposes than actual damages." *Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007, 1011 (9th Cir. 1994). In general, statutory damages serve "compensatory and punitive purposes" and are intended to "sanction and vindicate the statutory policy of discouraging infringement." *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009). Further, "when infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations." *Nintendo of America*, 40 F.3d at 1011.

Here, there is great need for statutory damages to serve – not just compensatory purposes – but punitive and deterrence purposes as well. First, as

discussed above, the proof of Frogan's intentional and malicious infringement of *The Nuke* is overwhelming. Second, Frogan was not alone in conducting infringing watch parties of *The Nuke* immediately or shortly after its release. Dkt. No. 1, pp. 62:12-15; RBN Decl., ¶ 3-4. A strong message must be sent that hosting a watch party that commercially exploits a copyrighted work in its entirety immediately upon release will not be tolerated.

Therefore, in light of the severity of Frogan's conduct and that her conduct was emulated by others, an award of statutory damages of $150,000 (or close to that amount) is warranted and reasonable under the circumstances. *See Amazon Content Services LLC v. DeBarr*, 793 F.Supp.3d 1242, 1254 (C.D. Cal. 2025) (finding a statutory damages award of $150,000 per work to be reasonable for default judgment); *Columbia Pictures Industries, Inc. v. Galindo*, 2022 WL 17094713, *11 (C.D. Cal. Nov. 18, 2022) (same).

### 2.   Alternatively, TEI should be Awarded the Amount in Frogan's GoFundMe

Alternatively, the Copyright Act authorizes TEI to receive actual damages and disgorge Frogan's profits that are "attributable to the infringement." 17 U.S.C. §§ 504(a), 504(c)(1). Since Frogan refuses to participate in this lawsuit and discovery, TEI is unable to obtain any information on: (1) the number of viewers of Frogan's watch party; (2) the amount of advertising revenue she received; or (3) the amount of paid subscriptions she received.

TEI is able to identify the amount that is currently in Frogan's GoFundMe – which as of this filing is $39,179. RBN Decl., ¶ 4, Ex. 3. TEI is entitled to these funds under the Copyright Act as profits attributable to Frogan's infringement of *The Nuke* as explained below.

Under the Copyright Act, the "copyright owner is entitled to recover … any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). "In establishing the infringer's profits, the copyright owner is required to present

proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* As Congress explained, the broadness of the rule is "to prevent the infringer from unfairly benefiting from a wrongful act." H.R. Rep. No. 94-1476, § 504, at 161 (1976).

The Ninth Circuit has held that, under the statute, (1) "the copyright claimant must first show a causal nexus between the infringement and the gross revenue;" and (2) "once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). This rule applies to claims of both direct and indirect profits. *Id.* at fn. 7. So long as the plaintiff "establish[es] a non-speculative link between the infringement and the actual profits," the profits are recoverable. *Id.* at 714 fn. 11 (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985)).

"Profits indirectly gained from infringements used in promotional efforts, as is the case here, fall squarely within the rubric of wrongful profits." *Polar Bear*, 384 F.3d at 708. If the "infringement at least partially caused the profits that the infringer generated as a result of the infringement," they are considered to be profits "that arise from the infringement." *Id.* at 711. "Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits." *Frank Music*, 772 F.2d at 514).

Here, the funds in Frogan's GoFundMe are profits attributable to her infringement. Frogan obtained those funds as a direct result of her infringement of *The Nuke* and TEI's attempt to hold her accountable for that infringement. Had Frogan not infringed, there would be no GoFundMe in the first instance.

Therefore, as an alternative, TEI should be awarded $39,179 if it is greater than the amount this Court decides to grant in statutory damages.

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

### 3.     TEI is Entitled to its Attorneys' Fees

"Section 505 of the Copyright Act permits district courts to award 'a reasonable attorney's fee to the prevailing party.'" *Amazon Content Services*, 793 F.Supp.3d at 1256 (quoting 17 U.S.C. § 505).[5] In determining whether to grant fees under the Copyright Act, courts may consider the following factors: "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective reasonableness of the losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." *Tresona Multimedia, LLC v. Burbank High School Vocal Music Association*, 953 F.3d 638, 653 (9th Cir. 2020).

*Amazon Content Services* succinctly explains why all the factors weigh in favor of granting attorneys' fees to TEI:

> In a default judgment case such as this one, these factors are readily met. Plaintiffs have achieved complete success on the merits, their complaint has not been shown to be frivolous, they were motivated to recover legally cognizable damages, no party has presented any objections to Plaintiffs' arguments, and attorneys' fees are warranted to deter both Defendants' substantive copyright infringement and their unresponsiveness to Plaintiffs' filings.

*Amazon Content Services*, 793 F.Supp.3d at 1257.

"Courts generally employ the 'lodestar' method to determine the reasonableness of the attorneys' fees requested." *Amazon Content Services*, 793 F.Supp.3d at 1257. This is determined by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.*

Here, TEI seeks to recover $30,404 in its fees. RBN Decl., ¶¶ 9-12. Ex. 5. As set forth in greater detail in the Declaration of Rom Bar-Nissim, his hourly rate of $375 to $400 is extremely reasonable – particularly for a highly experienced copyright litigator in Los Angeles. RBN Decl., ¶ 8. As further set forth in the Declaration of Rom Bar-Nissim, the total amount of hours he spent on analyzing and outlining Frogan's watch party, drafting the complaint, communicating with opposing counsel and researching and drafting this Application are also reasonable.

[5] While Local Rule 55-3 provides a schedule for attorneys' fees, the same rule authorizes an attorney to request fees in excess of that schedule.

MPA ISO TEI'S APPLICATION FOR DEFAULT JUDGMENT AGAINST MAJED

*Id.*, ¶ 9. Further, Mr. Bar-Nissim retained a researcher at an hourly rate of $30 in order to delegate tasks in a more cost-effective manner. *Id.*, ¶ 10.

Therefore, this Court should award TEI $30,404 in fees.

### 4. TEI is Entitled to Costs

"As the prevailing party, [TEI] is entitled to costs as set forth in 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d)(1), and Local Rule 54-3." *Wareka*, 2024 WL 4867233, *6. TEI requests that this Court authorize it to submit a Bill of Costs and Application to the Clerk to Tax Costs pursuant to Local Rule 54-2.

### E. There is No Dispute of Material Fact

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Wareka*, 2024 WL 4867233, *4 (quoting *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1060 (N.D. Cal. 2010)). "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wareka*, 2024 WL 4867233, *4 (quoting *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1082 (C.D. Cal. 2012); *see also Landstar Ranger*, 725 F.Supp.2d at 921-22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exists that preclude the entry of default judgment.").

Here, the Complaint contains extensive factual allegations regarding Frogan's infringement and how the H3Snark Mods facilitated that infringement. *See* Cmpt., pp. 17:14-28:13 (H3Snark Mods history of copyright infringement); pp. 38:19-41:4 (H3Snark Mods promotion of Frogan's watch party of *The Nuke*); pp. 46:16-62:15 (detailing why Frogan failed to make a fair use of *The Nuke*).

Equally important, the Complaint was accompanied by video exhibits of *The Nuke*, Frogan's watch party and the posts by the H3Snark Mods directing viewers to her stream. *See* Exs. D-E (deposit and broadcast copy of *The Nuke*); Exs. F-G (the H3Snark Mods posts); Exs. H-I (Frogan's watch party and clip of Frogan

promoting her watch party the day prior).

Therefore, this factor weighs in favor of default judgment because there is no possibility of a dispute concerning material facts, since the most important and material evidence to this case is already before the Court.

### F.    There is No Possibility of Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *Wareka*, 2024 WL 4867233, *4 (quoting *PepsiCo*, 238 F.Supp.2d at 1177). "This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wareka*, 2024 WL 4867233, *4 (citing *PepsiCo*, 238 F.Supp.2d at 1177).

Here, Frogan was properly served and even agreed not to challenge service under FRCP Rules 12(b)(4-5). Dkt. Nos. 13-14. Further, as demonstrated in the August 5, 2025 joint stipulation, Frogan was represented by counsel. Dkt. No. 13. Further, TEI informed Frogan's counsel on April 20, 2026 that, if she did not file a responsive pleading in three weeks (*i.e.*, by May 11, 2026), TEI would seek default and default judgment. RBN Decl., ¶ 6, Ex. 4. Moreover, TEI served Frogan's counsel with its request for entry of default and this application. *Id*.

Therefore, this factor weighs in favor of default judgment because there is no possibility of excusable neglect.

### G.    The Policy Favoring Decisions on the Merits is Inapplicable

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents the court from entering default judgment." *Wareka*, 2024 WL 4867233, *4 (quoting *Craigslist*, 694 F.Supp.2d at 1061. While cases "should be decided upon their merits whenever reasonably possible," the "termination of a case before hearing the mertis is allowed whenever a defendant fails to defend an action." *Wareka*, 2024 WL 4867233, *4 (quoting *Eitel*, 782 F.2d at 1472; *PepsiCo*, 238; F.Supp.2d at 1177; citing FRCP 55(a)). When "a defendant's failure to appear and respond 'makes a decision on the merits

impractical, if not impossible' default judgment is appropriate." *Wareka*, 2024 WL 4867233, *4 (quoting *PepsiCo*, 238 F.Supp.2d at 1177).

Here, Frogan had over ten months to respond to the complaint but failed to appear, respond or otherwise participate in this action. Therefore, this factor weighs in favor of default judgment because the policy for favoring decisions on the merits is inapplicable in this case.

## V.      CONCLUSION

For the reasons set forth above, TEI respectfully requests that this Court award it: (1) $150,000 in statutory damages or, alternatively, $39,179 in disgorged profits – whichever is greater; (2) $30,404 in attorneys' fees' and (3) grant TEI leave to submit its Bill of Costs.

Dated: June 29, 2026                              **HEAH BAR-NISSIM LLP**

By  /s/ Rom Bar-Nissim
ROM BAR-NISSIM
Attorneys for Plaintiff Ted
Entertainment, Inc.

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the within action or proceeding.  My business address is the law firm of Heah Bar-Nissim LLP, 1801 Century Park East, Suite 2400, Los Angeles, CA 90067.

On June 29, 2026, I served the following document(s) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TED ENTERTAINMENT, INC.'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MORGAN KAMAL MAJED**

| | |
|---|---|
| Bahram Niknia<br>NIKNIA LAW FIRM, INC.<br>1875 Century Park East<br>Suite 1240<br>Los Angeles, CA 90067 | Attorney for Defendant Morgan Kamal Majed p/k/a Frogan |

**[X]     BY MAIL:** I enclosed the document(s) identified above in a sealed envelope or package addressed to the persons addressed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary  course of business with the United States Postal Service, in a sealed envelope with postage fully paid. attached the document(s) to an email sent to the email addresses set forth above

I declare under penalty of perjury that the foregoing is true and correct and a member of the bar of this Court.

Executed this June 29, 2026, at Los Angeles, CA.

*/s/ Rom Bar-Nissim*

Rom Bar-Nissim